Sarah Linda PARKER, et al.,
Plaintiffs-Appellants,

and

Huey P. Mitchell, Appellant,

v.

Judith K. ANDERSON,
Plaintiff-Appellee,

and

Bell Helicopter Company, Etc., et al.,
Defendants-Appellees.

No. 81–1210.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Feb. 18, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Charles Padorr, Arlington, Tex., James C. Barber, Dallas, Tex., for plaintiffs-appellants.

Huey P. Mitchell, pro se.

Stephen N. Shulman, Mark C. Ellenberg, Arnold B. Podgorsky, Washington, D. C., Brown, Herman, Scott, Dean & Miles, Beale Dean, Fort Worth, Tex., for Bell Helicopter.

Wallace Craig, Fort Worth, Tex., Howard A. Specter, Michael D. Buchwach, Pittsburgh, Pa., for Judith K. Anderson.

Before THORNBERRY, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

We review the district court's approval of a settlement of a class action suit against Bell Helicopter Company and its award of attorneys' fees. The court's approval was granted over the objection of all but one of the eleven named plaintiffs as well as over the objections of a number of class plaintiffs. Improprieties are claimed to have occurred in the settlement negotiations and the agreement is challenged as inadequate in its terms. In addition, one of the attorneys for the class appeals the amount of attorney's fees awarded to his firm. Finding neither error nor abuse of discretion in the court's approval of the settlement and setting of attorneys' fees and costs, we affirm.

### Facts

In March 1975, Sarah Parker and Curtis Ford filed a class action suit against Bell Helicopter Company, a division of Textron, Inc., and certain unions, alleging discrimination in employment against blacks and females, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17. Between 1975 and 1979 six other lawsuits brought by nine plaintiffs alleged identical discrimination by Bell; two of these suits included unions as defendants.[1] The seven suits were consolidated into the instant proceeding.

Following consolidation, because the attorneys were unable to agree to an apportionment of responsibilities, the district court designated Howard Specter as lead counsel and Huey Mitchell and James Barber as associate class counsel, and assigned them concomitant duties. On April 21, 1978, the district court conditionally certified the litigation as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Extensive, reciprocal discovery on the merits began in October 1978 and continued until February 1980.

Trial was scheduled for March 3, 1980. At the pretrial conference on February 6, 1980, it appeared that a settlement might be possible; the court urged counsel to make a good faith effort to reach an agreement. On February 29, 1980, counsel reached a tentative agreement and moved jointly for a continuance.[2] The motion was granted and the court instructed counsel to inform the court on or before April 1, 1980, whether a complete settlement could be achieved.

During March 1980, class counsel met with the various named plaintiffs and discussed the tentative settlement proposal. Each of the eleven named plaintiffs authorized their counsel to note their approval of the class settlement, subject to Bell's acceptance of their individual demands which included a demand of $100,000 for one plaintiff, $84,000 for another, and guarantees of promotion to specific jobs for others. Bell countered with an offer of $1,500 each for ten of the named plaintiffs and $2,500 plus a future promotion for the eleventh.

On March 26, 1980, associate class counsel Barber met with all named plaintiffs to discuss the suit and proposed settlement. A discussion of the evidence, particularly the statistics plaintiffs were relying on, was planned. No serious discussion of the lawsuit was possible; plaintiffs were interested primarily in discussing their personal monetary demands. Apparently convinced that Bell's offer to them was too little, nine of

---

1. Subsequently, the claims against the unions were severed. They are still pending.

2. The motion reads:

   As previously reported to the Court informally, extensive good faith negotiations have been taking place between lead counsel for the Plaintiff class and counsel for the Employer-Defendant. These negotiations have now reached the point that substantial progress has been made, and counsel believe a reasonable probability exists that a full settlement can be reached.

   Counsel, therefore, jointly request a continuance for a status conference on April 1, 1980. By that date counsel believe that they will be in a position to inform the Court either that a settlement has been reached and concluded and in fact is ready for presentation to the Court or that a settlement is impossible. Counsel will extend every effort to the end that a settlement be reached.

the eleven plaintiffs expressed opposition to the settlement.[3]

On March 29, 1980, the attorneys for the parties approved a proposed Stipulation of Compromise and Agreement which embodied 18 of the 19 points contained in the tentative agreement confected on February 29, 1980. The proposal required Bell to deposit $1,250,000 in an interest bearing account to be distributed to the class members when and as directed by the court.[4] Certain affirmative relief measures projected to cost Bell approximately $1,000,000 to implement and maintain, were included. The proposal was made applicable only to the members of the class; Bell agreed to sever the individual claims of the named plaintiffs. Those claims are still pending.

On April 8, 1980, lead counsel Specter met with the named plaintiffs, intending to discuss the proposed settlement and his analysis of the strengths and weaknesses of the evidentiary base of their suit. The effort was futile; the plaintiffs focused on and voiced disagreement with Bell's counter to their individual claims. Specter offered to meet separately with each plaintiff. No one accepted his invitation.

On April 10, 1980, several plaintiffs moved to enroll Charles Padorr as their attorney for purposes of objecting to the settlement. By June 21, 1980, all plaintiffs had dismissed their original attorneys except the non-objecting Judith Anderson, who continued to be represented by Mitchell. On April 18, 1980, the proposed settlement was filed along with a motion for preliminary approval.

On May 29, 1980, the district court defined a subclass of "objectors" and appointed Padorr as their counsel with authority to conduct discovery into the propriety of the settlement negotiations and the fairness of the settlement. On July 25, 1980, the court preliminarily approved the settlement for purposes of notification of the class. After considering filings from all parties, including the objectors, the court approved forms of notice for dissemination to the class, direct and by publication. This notice advised that a hearing would be conducted to examine the fairness and adequacy of the settlement.

After being continued once, the hearing on the proposed settlement commenced on October 16, 1980. For two days the court received evidence from the proponents and opponents of the proposed settlement. The hearing extended into a third day, when the court received evidence on the issue of fees for the class attorneys.

On March 11, 1981, the court filed a comprehensive Memorandum Opinion and Order which found the settlement to be fair and reasonable. The court also assessed fees for the various class attorneys and allowed their recovery of costs incurred in preparing the matter for trial. On April 10, 1981, the court amended the earlier order to correct clerical errors, to effect one substantive change, and to provide for post-settlement attorney's fees and apportionment of interest accruing on the deposit. This appeal followed.

Objectors maintain that the settlement should be rejected because (1) the terms are not fair and reasonable, (2) the class attorneys did not properly represent the class in negotiations, and (3) the payment of attorneys' fees out of the class settlement fund creates an impermissible conflict of interest. Mitchell appeals his award of attorney's fees.

## I. Fairness and Adequacy of the Settlement

Rule 23(e) requires court approval of compromise settlements of class actions, but it is silent as to the standard to be applied. Nonetheless, the rubric is now

**3.** The trial court capsulated the evidence about the meeting as follows:

Angry and offended at what seemed to them small counteroffers, and fortified with a case of beer, the plaintiffs were ill disposed to listen to any explanation of the deficiencies of the statistical case against Bell. Posturing and wild talk took the place of reasoned analysis. At the close of the meeting, the plaintiffs voted to "reject" the settlement.

**4.** Bell had made an anticipatory deposit on March 3, 1980.

well established that the court will not approve a settlement unless it is found to be fair, adequate, and reasonable. *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977). In determining the adequacy and reasonableness of the proposed settlement, the court does not adjudicate the dispute, for as we noted in *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971): "[i]n examining a proposed compromise ... the court does not try the case. The very purpose of the compromise is to avoid the delay and expense of such a trial." In evaluating settlement proposals, six factors should be considered: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *See Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979).

■ Our appellate review of the district court's approval of a settlement is limited; an approved settlement will not be upset unless the court clearly abused its discretion.[5] *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971). Similar to the function of the trial court, our limited review rule is a product of the strong judicial policy favoring the resolution of disputes through settlement. *United States v. City of Miami*, 614 F.2d 1322 (5th Cir. 1980).

■ In deciding whether a clear abuse of discretion has occurred, we share the view of our colleagues of the Second, Fourth and Eighth Circuits that, absent fraud or collusion, the most important factor is the probability of the plaintiffs' success on the merits. *See, e.g., Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976); *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("If the settlement offer was grossly inadequate ... it can be inadequate only in light of the strength of the case presented by the plaintiffs.").

In the case at bar, the court approved a settlement which provided, because of the accrued interest, a cash recovery exceeding $1,440,000 and 15 specifications of employment enhancement which the court concluded would cost Bell approximately $1,000,000 to implement and maintain. The district court's detailed findings and conclusions, which include a thorough history and analysis of the litigation, reflect a careful evaluation of the settlement in light of the six factors set forth above.

■ After reviewing the entire settlement and pretrial record, the court concluded that the plaintiffs had "only a marginal chance of recovery in the five million dollar range," and that even if they were successful in recovering a judgment in the more realistic range of three to five million dollars an appeal raising serious issues was likely. Review and analysis of the plaintiffs' affidavits, testimony, and the opinion of their expert statistician, impressed the district court that substantial weaknesses existed in their case. The trial judge noted "a significant risk of failure to show liability on the major backpay issues," and that

---

**5.** In a recent opinion affirming the approval of a class action settlement, the Ninth Circuit articulated the role of the trial court and the need to afford it broad discretion:

>  Class actions vary widely in their circumstances, and the procedural protections and judicial responsibilities are necessarily only generally defined. Broad discretion is granted to the trial judge, enabling him or her to respond fluidly to the varying needs of particular cases. Therefore, although certain factors must be considered and certain procedures complied with, much of the judicial oversight of class actions is in the form of the sound discretion of the District Court.

*Mendoza v. United States*, 623 F.2d 1338, 1344 (9th Cir. 1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) (citations omitted).

the issues concerning the validity of Bell's education and experience requirements for hundreds of different jobs would be disputed hotly at trial, with sharply conflicting testimony about the statistical evidence, presenting an "all-or-nothing confrontation of unpredictable outcome." The judge also saw difficulties with the issue of certifying a class that included unhired applicants and Bell's facility at Amarillo. Problems were presented by the question of showing discriminatory intent for Title VII claims not based on adverse impact, and the validity of the causes of action based on affirmative action plans. Weighed against this background, the court concluded that the monetary award and the provisions for affirmative relief constituted a fair, reasonable, and adequate settlement.[6]

■ We are not persuaded that the trial court erred either in its assessment of the probabilities of success or the range of recovery. Objectors offered no evidence at the settlement hearing concerning these issues. They were represented then by able and experienced counsel who had been empowered to conduct all necessary discovery and allowed adequate time to do so.[7] We

find no basis in this record for the contention that the trial court abused its discretion in finding this settlement fair and reasonable.[8]

## II.  *Fairness and Adequacy of Representation*

Objectors contend that the attorneys did not represent the class fairly and adequately during negotiations. They contend that counsel failed to consult with them, withheld certain information, and misrepresented material matters. The record does not support any of these assertions.

This inquiry must be placed in proper perspective. Objectors' personal claims were not before the district court and are not before us; they were severed and are still pending. Rather, the objectors stand before us as representatives of the absentee class members. The question presented by this appeal is whether class counsel provided fair and adequate legal representation to the class as a whole. Necessarily, much of what counsel does for the class is by and through the class representatives, but that is neither the ultimate nor the key determi-

---

**6.** Even if the trial judge had found a comfortable probability that plaintiffs would have recovered $5,000,000, that factor would not mandate that the order approving the settlement be vacated. We agree with the comments by the Second Circuit when it confirmed the approval of a settlement which constituted only 12% of potential recovery in *City of Detroit v. Grinnell Corp.*: "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." 495 F.2d at 455. The court continued in a footnote: "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at n.2.

**7.** Conclusion 16 of the trial court's opinion reads, in pertinent part:

Despite their access to the file and to compulsory discovery, objectors adduced no evidence of any weight to rebut proponents' *prima facie* showing that the class case was not strong enough to demand larger monetary awards or additional affirmative relief.

**8.** Objectors challenge the 15 affirmative relief provisions, nine because they do not go far enough and six because they duplicate existing

programs. We reject the challenge as to the nine for the reasons discussed in text. The trial judge concluded that in the arms length negotiations, the strength of plaintiffs' case would not support the insistence of a more favorable result. We are not prepared to disturb this judgment call as an abuse of discretion.

As to the contention that six provisions are duplicative of existing programs, we simply do not agree. As an example, objectors insist that the provision requiring Bell to publicize the existence and purposes of its "Employee Skills Profile and Questionnaire," is duplicative and therefore meaningless. This document, when used, lists the skills, education, and work experience of Bell employees. The provision requires Bell to provide personnel to encourage and assist both old and new employees to complete and update these profiles. The record reflects that the profile program was available previously but it was not publicized and it was not implemented. The proposed program would be structured to insure utilization, to the advantage of employees. In this context, we do not find this procedure duplicative. Nor do we find the others defective for similar reasons.

nant. The compelling obligation of class counsel in class action litigation is to the group which makes up the class. Counsel must be aware of and motivated by that which is in the maximum best interests of the class considered as a unit.

The duty owed to the client sharply distinguishes litigation on behalf of one or more individuals and litigation on behalf of a class. Objectors emphasize the duty of counsel in non-class litigation. The prevailing principles in that situation cannot be imported wholesale into a class action setting. The fairness and adequacy of counsel's performance cannot be gauged in terms of the representation of the named plaintiffs. In addressing this point in our recent decision of *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981), we stated:

> Appellants' argment that the settlement cannot be applied to them because they did not authorize their attorney . . . to settle the case or otherwise consent to the settlement is also easily disposed of. Because the "client" in a class action consists of numerous unnamed class members as well as the representatives, and because "[t]he class itself often speaks in several voices . . ., it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole . . . ." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

The courts have recognized that the duty owed by class counsel is to the entire class and is not dependent on the special desires of the named plaintiffs. It has been held that agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable. "Because of the unique nature of the attorney-client relationship in a class action, the cases cited by appellants holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable." *Kincade*, 635 F.2d at 508; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 n.19 (4th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47

L.Ed.2d 734 (1976) ("Appellants do not argue, nor may they under the authorities, that the assent of the class plaintiffs is essential to the settlement, provided the trial court finds it fair and reasonable."); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir.), *cert. denied*, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974); *Robertson v. National Basketball Ass'n*, 72 F.R.D. 64 (S.D.N.Y.1976); *Purcell v. Keane*, 54 F.R.D. 455 (E.D.Pa.1972). *Accord, Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). The rationale implicit in these decisions is sound: the named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands. The trial court was not impressed favorably by the motivation of the objectors, finding as a fact that: "Plaintiff-objectors opposed the settlement in bad faith, primarily to gain leverage in settling their individual claims against Bell at exorbitant figures."

We measure class' counsel's performance of the duty to represent the class fairly and adequately as we gauge the fairness and adequacy of the settlement. It will follow generally that an attorney who secures and submits a fair and adequate settlement has represented the client class fairly and adequately. In this instance, we affirm the trial judge's findings as to the settlement and necessarily reject the contention that the attorneys' performance in confecting the settlement was inadequate.

Objectors contend that counsel did not consult with them in a meaningful way and that they failed to disclose some matters and misrepresented others. These allegations are contrary to factual findings by the trial judge and are not supported by the record.

### Consultation

Objectors complain of the inadequacy of contacts between counsel and the class members, especially as regards discus-

sions of relative strengths and weaknesses of their case. Objectors point to the paucity of contact between counsel and the class representatives, pointing particularly to the five month period immediately preceding the February 29, 1980, tentative accord. The record does not support this assertion.

We note over 30 contacts between a member of Specter's staff and the class representatives during that period. In addition, the record reflects substantial contacts between class counsel and the representatives during March and April of 1980. During that period, the class attorneys advised the representatives of the terms of the proposed settlement, evaluated the evidentiary bases for the case, held meetings to discuss the settlement, and attempted to negotiate a monetary increase for some of the individual representatives.[9] Objectors suggest that these contacts are immaterial, contending that the February 29 letter was, in effect, the final settlement agreement. This objection is not well taken. As appellees point out, the tentative agreement was conditional, incomplete, and subject to approval, including the ultimate approval of the court.

The trial court reached the following conclusions: "Counsel consulted regularly and frequently with the class representatives throughout the case"; during March "all named plaintiffs consulted their attorneys about the class action settlement and authorized them to convey binding offers to Bell and to approve class settlement on their behalf if accepted," . . .; and "lead counsel behaved appropriately in negotiating the tentative settlement as spokesman for the class, immediately advising the named plaintiffs and associate counsel of its terms

by letter, and ascertaining the named plaintiffs' reaction to the settlement before presenting it to the court." We perceive no error in these findings.

### Disclosure

■ Objectors contend the class attorneys failed to inform the district judge that all but one of the named plaintiffs objected to the settlement agreement. Judge Mahon, however, concluded that "it would be a gross distortion of the events to suggest that counsel attempted to conceal or even delay notifying the court of the plaintiff-objectors dissent once it became irreconcilable." In addition, in his May 27, 1980 order, the judge observed that by April 10, 1980, four of the objectors were dissatisfied with the settlement and had taken steps to discharge Mitchell as their attorney. Obviously, the trial judge is in the best position to know whether he was or was not informed of the opposition to the settlement. His finding in this regard is affirmed.

### Misrepresentation

■ The letter of February 29, outlining the terms of the tentative agreement, contained no reference to a time limit for the injunctive relief against Bell. The final agreement of March 28 contained a provision limiting injunctive relief to four years. Objectors claim that the failure of class counsel to inform them of this modification was misrepresentation. To support their contention, they point to the March 25 letter from Specter to Mackey explaining the terms of the settlement; that letter did not advise of the limitation.

Specter testified at the settlement hearing that any provision in the final agree-

---

**9.** For example, in a letter to plaintiff Mackey, dated March 25, 1980, lead counsel devoted approximately four pages to a detailed evaluation of the strengths and weaknesses of the case. In summarizing his purpose for writing he stated: "I want you to have a clear understanding of the risks which you are running before you decide what course to take and whether to seek to settle or take your chances in court." A similar letter was sent to plaintiff Odom.

In addition, on at least two occasions, it was the named plaintiffs that refused to accept counseling and evaluations offered by class counsel. After the February 29 letter but before the final settlement agreement, associate counsel Barber met with plaintiffs to discuss the case. Instead of rational discussion, he was confronted with hostility and anger. After the March 28 agreement, but before the settlement hearing, lead counsel offered to discuss settlement with plaintiffs individually. The invitation went begging.

ment that was not in the February 29 letter was agreed to on March 28. The four year term for injunctive relief is one of those provisions. This testimony is not controverted. Since counsel was not aware of this provision during the conferences and communications with the plaintiffs in March 1980, his failure to inform them of this element cannot constitute misrepresentation. We find no merit in this contention.

### III. *Attorneys' Fees*

Objectors contend the settlement should be set aside because the manner in which the attorneys' fees were awarded created an impermissible conflict of interest. We agree with objectors that awards of attorneys' fees in the class action context present a potential for abuse, but we find no impropriety in the instant case.

■■■■ The fees of class action attorneys have been paid historically out of the fruits of their labors. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The amount of the attorneys' fees must be approved by the district court at the settlement hearing required under Rule 23(e). A full hearing is required.[10] The trial judge has a responsibility to assess the reasonableness of the attorneys' fees in light of the standards enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[11] and to enter findings of fact and conclusions of law setting out the basis for the fee award. *Piambino v. Bailey*, 610 F.2d 1036 (5th Cir. 1980). *See Norwood v. Harrison*, 581 F.2d 518 (5th Cir. 1978).

When these procedures are complied with, our review of a trial court's award is confined to determining whether the trial court abused its discretion.

■■■ In the present case, the settlement agreement provided that "all Plaintiffs' attorneys' fees, expenses, and costs awarded by the Court shall be paid from the Settlement Fund" and that Bell "would have no further liability as to fees and costs than from the Settlement Fund except with respect to fees earned or costs incurred subsequent to the date of execution of this Stipulation." The agreement did not purport to set the amount of attorneys' fees. Instead, the third day of the settlement hearing was devoted to the question of attorneys' fees. That the trial court set the fees in light of the *Johnson* standards is evident from its opinion which explains in detail the methodology and basis for the various awards.[12] We find no abuse of discretion in the setting of attorney's fees.

■■■ The appellants urge us to find that regardless of the care taken by the trial judge, a settlement providing for attorneys' fees payable out of the settlement fund creates an impermissible conflict of interest, citing *Piambino v. Bailey* and *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir. 1977). Their reliance on these cases is misplaced.

In *Prandini*, the settlement agreement provided for payment of a certain sum to the class and another set sum to counsel. The two separate funds were negotiated

---

**10.** A full hearing is one in which notice is given to the class of the proposed attorneys' fees, counsel offers relevant evidence, and is available for cross-examination, and objectors have an opportunity to be heard. *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335 (5th Cir. 1978); *affirming* 420 F.Supp. 674 (S.D.Tex.1976); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1971).

**11.** The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. In *Piambino v. Bailey*, we added two additional factors: the difficulty of the case and the uncertainty of the recovery.

**12.** The fact that one of the class attorneys is an appellant, contesting the amount of his fees, attests to the careful and exacting manner in which the trial court analyzed the fee petitions and determined the amounts to award.

simultaneously and the court recognized the inherent conflict. Similarly, in *Piambino*, the settlement agreement provided for the payment of a specific amount of attorneys' fees out of the settlement fund. The district court did not make an independent evaluation of the reasonableness of the fees, stating that it was:

> not being asked to set a reasonable attorneys' fee in conjunction with the instant settlement; rather the court is being presented with a proposed settlement, agreed to by all parties and unopposed by the class, which incorporates an award of attorneys' fees in the amount of $750,-000.00 as a vital part of the settlement.

610 F.2d at 1328. We held that the district court improperly abdicated its responsibility to assess the reasonableness of the attorneys' fees and reversed its approval of the settlement.

Neither situation is presented in the instant case. The amount of the attorneys' fees was left entirely to the discretion of the court. The evil feared in some settlements—unscrupulous attorneys negotiating large attorney's fees at the expense of an inadequate settlement for the client—can best be met by a careful district judge, sensitive to the problem, properly evaluating the adequacy of the settlement for the class and determining and setting a reasonable attorney's fee in light of the *Johnson* standards. We find no abuse of discretion in the present case and affirm the award of attorneys' fees and costs recoveries to the attorneys.

### IV. *Huey Mitchell's Fees*

 Mitchell requested $72,135.20 in fees; the trial court awarded $21,980.50. In arriving at this amount the trial court obviously considered the *Johnson* criteria. Mitchell's fee petition presented ·a particular problem. His fee request was not documented properly. It did not show that the fees were for services that benefited the class, a requirement necessarily imposed on class counsel. Services rendered for the individual claims of named plaintiffs or claims against the unions, all of which were severed and are pending, could not be compensated from funds belonging to the class.

Further, Mitchell's petition was vague and unclear. Even after he was given an opportunity to revise and clarify his petition, Mitchell failed to state how many hours he contended were compensable under the directives imposed by the trial court on all of the class attorneys. Following Mitchell's failure to adduce a definitive petition, the trial court gleaned the record and found 344 hours to be compensable. Mitchell was awarded sixty-five dollars per hour for his services. The time for the other associates in Mitchell's firm was compensated at five dollars per hour, since the court concluded that these services were performed by clerks.

Under these circumstances, an affirmance is mandated. As we held in *Carr v. Blazer Financial Services, Inc.*, 598 F.2d 1368, 1371 (5th Cir. 1979):

> The burden rests on the party seeking an attorney's fee award to file a fee application and proffer proof going to the *Johnson* guidelines before the trial court. While a trial court should adhere to the *Johnson* standards, it is not to be expected, as plaintiff suggests, that the trial court must take the initiative in ferreting out the relevant facts.

The burden placed on the trial court by the inadequate submission was recognized by Mitchell in his testimony at the settlement hearing. Mitchell conceded that no one could determine definitively how much time he had spent on behalf of the class by reviewing the submissions he made in his fee petition. We can do no better job than the trial judge. Indeed, he is in a superior position to judge a fair fee award. He presided over this case, observing the performance of counsel. In this instance, with an admittedly inadequate record, we are doubly chary of rejecting the trial court's findings. We discern no abuse of discretion.

The judgment of the district court is AFFIRMED in all respects.