Thomas **SALINAS**, et al., Plaintiffs-Appellants Cross-Appellees,

and

Chester Torry,
Plaintiff-Intervenor-Appellant
Cross-Appellee,

and

Stuart M. Nelkin and Warren Weir, Appellants,

v.

**ROADWAY EXPRESS, INC.**, et al.,
Defendants-Appellees,

Roadway Express, Inc., Defendant-Appellee Cross-Appellant.

No. 81–1623.

United States Court of Appeals,
Fifth Circuit.

July 16, 1984.

Carnegie H. Mims, Jr., Houston, Tex., for Salinas.

Richard B. Fields, Memphis, Tenn., for Chester Torry.

Stuart M. Nelkin, Rose Ann Reeser, Houston, Tex., Warren Weir, San Antonio, Tex., Joel J. Reinfeld, Houston, Tex. (on the brief), for Nelkin and Weir.

Frank Manitzas, Shelton E. Padgett, San Antonio, Tex., for Roadway.

James L. Hicks, Jr., Dallas, Tex., for Teamsters Local 657 and 988.

G. William Baab, Dallas, Tex., for Intern. Broth. of Teamsters etc.

Before GEE, RANDALL, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

On September 17, 1971, black and Mexican-American truck drivers brought a class action employment discrimination suit in the Western District of Texas against their employer, Roadway Express, Inc. (Roadway), and their union representatives seeking equitable relief and back pay. The plaintiffs alleged that defendant Roadway had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by favoring white employees for the higher paying position of road driver while nonwhites were relegated to the lower paying position of city driver. The employees also contended that the union had violated the Act by agreeing with the employer to establish and maintain a dual seniority system in the collective bargaining agreement for city and road drivers which perpetuated past discriminatory practices. *See* 42 U.S.C. § 1981. Three other class actions involving similar issues, a substantially similar class, and virtually the same defendants were subsequently consolidated with the instant action for coordinated pretrial proceedings. The district court thereafter dismissed the other actions but allowed two of the named plaintiffs to intervene in this suit. The motions of George Salazar and Chester Torry to intervene as named plaintiffs were denied by the court.

Following a period of over five years in which the parties engaged in extensive discovery, the action was tried before the district court in April 1977. The trial judge bifurcated the proceedings into Phases I (liability) and II (remedy). At the conclusion of the Phase I proceedings, the court found that the plaintiffs had demonstrated a *prima facie* case of employment discrimination by Roadway; but, that such activity by the employer ceased on January 1, 1968. In Phase II, the court awarded retroactive seniority to ten class members and attorneys' fees to class counsel, but denied back pay. The court also concluded that the dual seniority system effective under the collective bargaining agreement is bona fide and nondiscriminatory. On appeal, the plaintiff class contends that the district court erred in: (1) finding that Roadway ceased discriminatory practices on January 1, 1968; (2) denying back pay; (3) its determination of seniority dates; (4) limiting relief to only those class members who did some overt act evidencing an intent to secure a road job; and (5) refusing to allow

George Salazar to intervene. Plaintiff Thomas Salinas also challenges the court's holding that the dual seniority system is lawful. Chester Torry contends that the court erred in refusing to allow him to intervene. On cross-appeal, Roadway maintains that the court erred in not granting its motion for judgment as to all liability. We vacate the judgment of the district court for failure to comply with Fed.R. Civ.P. 52(a) and remand.

Roadway is the largest common carrier of general commodity freight in the United States, operating terminals in thirty-three states. For the purposes of collective bargaining, Roadway drivers are represented by the International Brotherhood of Teamsters (Teamsters). The Southern Conference of Teamsters is a delegate body of the Teamsters composed of representatives of the affiliated local unions in ten southern states. There are separate collective bargaining contracts between Roadway and the union concerning city and road drivers which establish different terms and conditions of employment, including seniority lists, rates of pay, and levels and types of fringe benefits. Thomas Salinas, as named plaintiff, brought suit on behalf of the class of black and Mexican-American city truck drivers in the Southern Conference. The certified class consisted of:

> All persons who have been reported by Roadway Express, Inc. to the Equal Employment Opportunity Commission as Negroes, Mexican Americans and Spanish Surnamed Americans, who do or did city driving for Roadway Express, Inc. at any time from November 21, 1968, until the present time, within the territory covered by the Southern Conference of Teamsters Supplemental Agreement to the National Master Freight Agreement (Arkansas, Louisiana, Oklahoma, Texas, Florida, Georgia, Mississippi, Tennessee and the City of Asheville, North Carolina).

Record Vol. III at 1614. In substance, the plaintiffs alleged that prior to the filing of their lawsuit in 1971, Roadway discriminated against blacks, Mexican-Americans, and Spanish-surnamed Americans in its hiring practices, and that Roadway's "no transfer" policy, coupled with the union's dual seniority system, perpetuated the effects of the discriminatory hiring practices even after the practices ceased.[1]

*Class Membership Cutoff Date*

The district court found that through statistical proof, as well as through individual testimony and exhibits, the plaintiffs had demonstrated a system-wide pattern and practice of racial discrimination by Roadway relative to the filling of road driving positions. The court also found: "However, the credible, believable evidence demonstrated that such activity by Roadway Express, Inc., ceased on January 1, 1968." Record Vol. X at 55. The plaintiffs maintain that the court's determination of the cutoff date for class membership was arbitrary.

The court's finding that Roadway ceased its unlawful activity on January 1, 1968, raises cause for concern in that it appears to be contradicted by other findings by the court. For instance, the court found that Roadway never employed a black road driver in the Southern Conference until May 5, 1969, and that no Mexican-American was employed in that position until March 11, 1972. Other of the court's findings also indicate that minorities were dissuaded

---

1. Virtually the same attacks were made against Roadway's employment practices in a previous Title VII action. In *Bing v. Roadway Express, Inc.*, 444 F.2d 687, 688 (5th Cir.1971) (*Bing I*), a class action brought by black city drivers in Roadway's Atlanta, Georgia, terminal, this Court detailed Roadway's "no transfer" policy:

   > Roadway ... has intentionally discouraged transfers between the collective bargaining units—particularly between the road driver unit and the city driver unit—through the application of a 'no transfer' rule. The rule,

   in effect, requires an employee who desires to transfer to another job to resign his present position and thereby forfeit the employment rights accrued under it. He must then apply for the new position as if he were a stranger to the Company, with no assurance from Roadway prior to resigning his job that he will be hired for the new position.

   The *Bing I* Court found the conclusion inescapable that the no-transfer policy indeed had the effect of perpetuating Roadway's past discriminatory hiring policy. 444 F.2d at 690.

**1578**

from applying for road driving positions at least through May 1971. The reason that January 1, 1968, was selected as the cutoff date for class membership cannot be discerned from the district court's findings of fact and conclusions of law. Plaintiffs note that at a hearing on the court's proposed judgment, the trial judge indicated that he chose that date because class member Willie Luckett received a road driver application on that date in response to a letter that he had written to Roadway. *See* Record Vol. XII at 34–35. In its findings of fact, however, the court found that Luckett did not receive a letter from Roadway detailing the procedure for applying for a road job until March 19, 1971. Even more confusing is the fact that the court granted retroactive seniority to three class members who became city drivers *after* January 1, 1968. It should also be noted that, in their proposed notices to class members, both Roadway and the plaintiffs recited that the class included minority employees who did or were doing city driving from November 1, 1968, until the time of suit.

■■■ This Court reviews the district court's findings under the clearly erroneous standard. In doing so, we cannot be left to speculate as to the factual basis for the district court's conclusion. This Court cannot determine whether the district court's selection of the January 1, 1968, cutoff date was clearly erroneous when the district court has made no more than conclusory findings. We must therefore vacate the judgment of the district court for failure to comply with Fed.R.Civ.P. 52(a)[2] and remand for findings which indicate, with specificity, the factual basis for the district court's determination of the cutoff date for class membership. *See Redditt v. Mississippi Extended Care Centers, Inc.,* 718 F.2d 1381, 1386 (5th Cir.1983). In an effort to guide the court upon remand, we note that this Court has recognized the desirability of establishing a cutoff date for class membership in a Title VII suit in order to facilitate the disposition of the case. *Sagers v. Yellow Freight System,*

*Inc.,* 529 F.2d 721 (5th Cir.1976). In *Sagers,* this Court held that the district court did not err in establishing a cutoff date where there was ample unrefuted statistical evidence to support a finding that discrimination persisted at least until the cutoff date, and both the company and the plaintiff could agree on the date. 529 F.2d at 735. On remand, the district court is free to modify its ultimate conclusion concerning the cutoff date, or it may adhere to its original conclusion. It is stressed, however, that it is encumbent upon the court to clearly express the factual basis for its determination.

*Denial of Back Pay Relief*

■■■ Plaintiffs next challenge the district court's refusal to grant relief in the form of back pay. The district court found that "[t]he evidence adduced at trial failed to demonstrate in any quantifiable way a means by which back pay could be awarded...." Record Vol. X at 56. The court also found that there were no equitable reasons to award back pay. Difficulty in calculating the precise amount of back pay does not defeat the right itself. *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 260 (5th Cir.1974) *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). Indeed, "in computing a back pay award two principles are lucid: (1) unrealistic exactitude is not required, (2) uncertainties in determining what an employee would have earned but for discrimination, should be resolved against the discriminating employer." *Id.* at 260–61 (footnotes omitted). Moreover, when a class sustains an economic loss from discriminatory employment practices, there is a presumption in favor of back pay. *United States v. United States Steel Corp.,* 520 F.2d 1043, 1053–54 (5th Cir.1975) *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976). Thus, back pay should be denied "only for reasons which, if generally applied, would not frustrate the central statutory purposes of eradicating discrimination

---

**2.** Fed.R.Civ.P. 52(a) provides that "[i]n all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon...."

throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). During the remedy phase of the trial, plaintiffs offered the testimony of an expert witness who compared the wages of city and road drivers between 1968 and 1974 and computed a differential of average wages between the two positions from 1969 to 1974. The expert also testified that it was possible to do individual calculations. This evidence stands in stark contrast to the district court's findings. Upon remand, the back pay issue should be reconsidered by the court.

### Rightful Place Seniority

■ Plaintiffs also maintain that the district court erred in its determination of seniority dates. In cases of this type, the calculation of rightful place seniority is predicated upon the date that an individual class member qualified for road employment *and* such a position became available. *Sagers*, 529 F.2d at 734; *see also Rodriguez v. East Texas Motor Freight*, 505 F.2d 40 (5th Cir.1974); *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir.1973) (*Bing II*). In the instant case, the district court granted road terminal seniority to ten class members retroactive to March 19, 1971. March 19, 1971, is presumably the date that the first vacancy occurred after January 1, 1968. Upon remand, the district court should recalculate the seniority date of each individual plaintiff found to be entitled to relief utilizing the formula enunciated in *Sagers*. *See* 529 F.2d at 734.

### Proof of Willingness to Transfer

■ The plaintiff class maintains that the district court erred in granting relief only to those ten class members who the court determined were ready, willing, and able to accept employment as over-the-road drivers. The court expressly found that only those ten individuals made informal inquiry concerning road jobs, expressed an interest in obtaining road jobs, and took some overt action to secure road jobs. In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365–66, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977), the Court acknowledged that "[w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." Indeed, the best indication of whether a city driver desired to transfer to a road job in the past is reflected in whether he presently desires to transfer. *See Rodriguez*, 505 F.2d at 64. It was therefore error for the district court to out of hand exclude class members who took no overt action to secure a road job. Upon remand, the court should afford an opportunity to class members excluded from relief to demonstrate their present willingness to transfer to road jobs.

### George Salazar

■ The plaintiff class contends that George Salazar should have been allowed to intervene as a named plaintiff because he had filed a charge with the Equal Employment Opportunity Commission (EEOC) on April 15, 1966, and had obtained a right-to-sue letter. After Salazar received the right-to-sue letter, however, he failed to timely institute the required civil action. When Salazar did eventually file suit, his action was dismissed with prejudice by the district court, and he did not appeal the dismissal. In order to qualify as a named plaintiff in the instant action, Salazar must have been in a position to pursue his own Title VII action. *See Hodge v. McLean Trucking Co.*, 607 F.2d 1118, 1120–21 (5th Cir.1979). Since Salazar could not have pursued his own Title VII action, the court was correct in not allowing him to intervene.

### Chester Torry

■ On November 17, 1971, Chester Torry filed an EEOC charge in Memphis against Roadway. Upon receiving a right-to-sue letter, he timely filed a class action suit in the Western District of Tennessee in December 1976. In February 1977, Road-

way moved for a protective order on the grounds that Torry was included in the class as defined by the court in the instant action. Torry thereafter made a motion to intervene in this action, which the district court denied. The relief fashioned by the district court in its final judgment was limited to drivers in the Houston, Dallas, and San Antonio terminals. On appeal, Torry contends that the district court apparently excluded the Memphis class members because it believed that the consent decree in *United States v. Roadway Express, Inc.*, 2 Empl.Prac.Dec. (CCH) ¶ 10,295 (N.D.Ohio 1970), was *res judicata* as to their claims.

In May 1968, the United States Attorney General brought suit against Roadway in federal court in the Northern District of Ohio alleging that Roadway was engaged in a system-wide pattern and practice of denying employment opportunities to blacks. After extensive litigation and negotiations, a consent decree was entered by the district court on September 1, 1970. The Teamsters, though never formally made a party to the litigation, also participated in the formulation of the consent decree. The decree enjoined Roadway from:

(a) engaging in any act or practice whereby Negroes are denied equal employment opportunities because of race or color including the right to be hired, promoted, upgraded or assigned, and continued in employment;

(b) failing or refusing to hire, promote, upgrade or reassign any individual, terminating any individual's status as an employee or applicant for employment because of his race or color;

(c) engaging in any act or practice which has the purpose or effect of discriminating against any individual because of his race or color.

*United States v. Roadway*, 2 Empl.Prac. Dec. at ¶ 10,295. The decree also permitted all city drivers at Baltimore/Washington and Dallas, regardless of race, to request consideration for transfer to a road driver position between October 1 and October 30, 1970. The decree further directed Roadway to offer to thirty-two named individuals, who had unsuccessfully sought to apply for over-the-road positions at Memphis in January 1968, over-the-road positions if they were qualified, as vacancies occurred.

Torry maintains that for purposes of *res judicata* and collateral estoppel, he and the Memphis class are not bound by the prior action by the Attorney General because they were neither parties to it, nor have interests such as to be in privity with the Attorney General. Although Torry was employed by Roadway as a city driver on September 1, 1970, the date of the consent decree, he and the class of black city drivers that he purports to represent were not granted any relief as a result of the decree because the decree made no provision for black city drivers who desired to transfer to road driving positions after January 1968. Thus, his action sought an extension of the relief granted in *United States v. Roadway*, and was not precluded by the consent decree. *See Rodriguez*, 505 F.2d at 65; *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201 (2d Cir.1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973). On remand, the district court should proceed to the merits of Torry's claim.

*Dual Seniority System*

Plaintiff Salinas challenges the court's conclusion that the dual seniority system effective under the collective bargaining agreement between Roadway and the union is bona fide and nondiscriminatory. The identical seniority system was reviewed by the Supreme Court in *Teamsters*. There, the Court held that "an otherwise neutral, legitimate seniority system does not become unlawful under Title VII simply because it may perpetuate pre-Act discrimination. Congress did not intend to make it illegal for employees with vested seniority rights to continue to exercise those rights, even at the expense of pre-Act discriminatees." 431 U.S. at 353–54, 97 S.Ct. at 1864. We therefore reject Salinas' contention.

*Timeliness of Plaintiffs' Action*

On cross-appeal, Roadway contends that it was entitled to judgment as to all liability because a discrimination charge by a class

member was not timely filed with the EEOC. Thomas Salinas filed a charge of discrimination with the EEOC in February 1971. He received a right-to-sue letter in September 1971 and filed suit in district court shortly thereafter. Because the district court found that Roadway ceased its discriminatory practices on January 1, 1968, Roadway reasons that under *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), plaintiffs' suit was untimely because the EEOC charge was not filed within 180 days of the end of discrimination. In *Evans*, the Supreme Court held that the operation of United's seniority system was not unlawful under Title VII even though it perpetuated post-Act discrimination, because the discrimination had not been the subject of a timely complaint by the discriminatee. 431 U.S. at 558, 97 S.Ct. at 1889. Roadway's contention that plaintiffs' action was untimely is inextricably tied to the district court's finding that discrimination by Roadway ceased on January 1, 1968. Because we vacate and remand the district court's judgment for more complete findings, we do not reach defendant's argument.

The judgment of the district court is vacated and the cause remanded for proceedings not inconsistent with this opinion.

VACATED AND REMANDED.