Thomas SALINAS, et al.,
Plaintiffs-Appellees,

E.L. Andrews, et al.,
Plaintiffs-Appellants,

v.

ROADWAY EXPRESS, INC., et al.,
Defendants-Appellees.

No. 85–2726.

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1986.

Larry Q. Evans, Houston, Tex., for plaintiffs-appellants.

Carnegie Mims, Jr., Houston, Tex., for Thomas Salinas and Forty other individuals.

Shelton E. Padgett, San Antonio, Tex., G. William Baab, Dallas, Tex., Kris J. Bird, San Antonio, Tex., for Roadway Express.

Steve Frank, Stuart M. Nelkin, Houston, Tex., Warren Weir, San Antonio, Tex., James L. Hicks, Dallas, Tex., for Class.

Oscar W. Adams, III, Birmingham, Ala., for Curtis Marbury, et al.

Before POLITZ, RANDALL and JOLLY, Circuit Judges.

PER CURIAM:

In this appeal, certain class members challenge the fairness of a consent decree entered in a class action employment discrimination suit that has involved over fifteen years of litigation. The sole issue for our review is whether the district court abused its discretion by approving the consent decree. All parties agree that the six-part test in *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982), is controlling. Because the appellants have failed to show that the consent decree is unfair based on even one of the six *Parker* factors, we affirm.

I

This is the second time an appeal from this litigation has come before our court. The facts of the case are fully set out in our earlier opinion, *Salinas v. Roadway Express, Inc.*, 735 F.2d 1574 (5th Cir.1984). This action originated in September 1971 when black and Mexican-American truck drivers filed a class action employment discrimination suit, alleging that their employer, Roadway Express, Inc. ("Roadway"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("the Act"). The plaintiff class alleged that Roadway awarded the higher-paying position of road driver to white employees while giving the lower paying position of city driver to blacks and Hispanics. The class also contended that the union had violated 42 U.S.C. § 1981 by agreeing to maintain a dual seniority system for city and road drivers in the collective bargaining agreement. After five years of discovery, the action was tried. In bifurcated proceedings, the district court found that the plaintiffs had demonstrated a prima facie case of employment discrimination by Roadway but that Roadway ended its discriminatory practices on January 1, 1968. This conclusion was not supported by specific factual findings. The district court held further that the dual seniority system in the collective bargaining agreement was nondiscriminatory. The court denied back pay to class members, awarded retroactive seniority to ten members and awarded attorneys' fees to class counsel. The plaintiff class appealed.

A panel of this court vacated the judgment and remanded. *Salinas*, 735 F.2d 1574. Because the district court provided no specific findings of fact to support its conclusion that Roadway's discriminatory practices ended on January 1, 1968, the panel held that the district court failed to comply with Fed.R.Civ.P. 52(a). This court also held that (1) the district court erred in denying back pay; (2) it improperly limited relief to those few class members who had made inquiries about placement in road driver positions prior to the litigation; (3) the dual seniority system was nondiscriminatory; and (4) on remand the district court should recalculate the seniority date of each plaintiff, using the formula in *Sagers v. Yellow Freight Systems, Inc.*, 529 F.2d 721 (5th Cir.1976).

The court left unresolved Roadway's claim that no employee had filed a timely discrimination complaint with the EEOC. Roadway contended that the first EEOC complaint against it was filed in February 1971, after the expiration of EEOC's 180–day statutory filing period. Under *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the action was arguably untimely and subject to dismissal. However, the panel postponed resolution of Roadway's claim until the district court provided findings concerning the date discrimination ended. Thus, if the district court had provided adequate factual support for its original finding of a 1968 discrimination cutoff date, the plaintiff class

would have risked dismissal of the action as untimely, thereby losing *all* relief.

Faced with this uncertainty, the parties began protracted and emotionally charged negotiations that finally resulted in the now disputed consent decree. On April 12, 1985, the district court granted preliminary approval of a proposed consent decree. Fifty-two individuals filed objections to the proposal. Forty-two of the objectors belonged to the plaintiff class that was comprised of 122 members. Following a fairness hearing, the district court entered an order on November 4, 1985, approving the consent decree.

Under the current settlement terms, all class members receive a monetary award, and ten members retain over-the-road seniority retroactive to March 1971. All members may transfer, without seniority, from a city driver to a road driver position. If members elect to transfer, they retain a thirty-day reversal right with seniority to their former positions.

## II

At oral argument, counsel for the objecting class members argued that the district court incorrectly concluded that only twelve road driver vacancies existed in the Southern Conference of Teamsters between the effective date of the Act and January 1, 1968, the discrimination cutoff date. Counsel also claimed that the district court did not properly assess the decree because consenting class members did not testify at the fairness hearing. Finally, counsel argued that seniority calculations in the consent decree did not comply with the *Sagers* formula.

On this record we find no support for the objectors' contention that the available road driver positions in the Southern Conference prior to 1968 exceeded the vacancies indicated by the district court. In fact, at trial the objectors' expert witness only testified about road driver vacancies nationwide. This testimony provides no basis for determining Southern Conference vacancies, and any attempt to do so would be speculative at best.

■ Moreover, the lack of testimony from consenting class members at the fairness hearing was in no way prejudicial to the objectors. Counsel suggested that consenting members agreed to the decree solely to avoid protracted litigation. Even assuming this were correct, a class member's desire to reach a settlement after fifteen years of litigation is certainly reasonable and does not indicate unfairness in either the consent decree or the negotiating process. Finally, we note that this testimony was available to the objectors through subpoena, but they failed to call any consenting members as witnesses.

■ The objectors' final argument, that the district court erred in approving the seniority calculations, also fails. Not only is the dual seniority system, of which they complain, valid, *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), but the district court approved these calculations, based upon its evaluation of the availability of road driver positions, a determination within its discretion under *Sagers*. *See Sagers*, 529 F.2d at 734.

## III

■ Despite the objectors' complaints expressed at oral argument, there is no dispute that in determining whether the trial court abused its discretion, this court must evaluate the consent decree according to the six-factor test articulated in *Parker*, 667 F.2d at 1209. The factors we must consider are (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of litigation; (3) the stage of the proceedings and the actual amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representatives and the absent class members. *See also Pettaway v. American Cast Iron Co.*, 576 F.2d 1157 (5th Cir.1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979).

It is clear from the record that the objectors have failed to meet their burden under every factor of the *Parker* test and are unable to show any unfairness, injustice or inadequacy in the consent decree. First, the objectors concede that there was no fraud or collusion during the negotiations. Second, although the objectors agree that the litigation has thus far been complex and expensive, they suggest that, at the time of settlement, recalculating seniority rights according to their interpretation of the *Sagers* formula would not have been a lengthy matter. We disagree. Seniority rights was the most controversial and hard-fought of all the issues in this case. All negotiating parties view the compromise now reached on seniority rights as the most formidable achievement of the two years of negotiations following our remand. If this issue were litigated, the myriad legal and equitable considerations involved in granting seniority rights to some class members at the expense of other employees already on seniority waiting lists would have surely resulted in prolonged legal battles.

The objectors also fail to show any unfairness based on the third prong of the *Parker* test. The settlement occurred late in the proceedings following a prior appeal to this court. All discovery, which occurred over a five-year period, was complete. Any further delay in arriving at a settlement could have impaired the class members' chance for any recovery.

The fourth and perhaps most crucial consideration in this litigation was the factual and legal obstacles threatening the class's chance of success on the merits. Quite simply, if, on remand, the district court had found that discrimination ended on January 1, 1968, the suit could have been dismissed as untimely under *Evans,* and class members would have received no compensation whatsoever. This tenuous legal and factual posture weighs heavily in favor of approving the present settlement. In addition, the class members' possible monetary recovery was far from certain; it ranged from zero to several million dollars.

Finally, approximately thirty-four percent of the known class members filed objections. This percentage is not unreasonable in comparison to the number of objectors in similarly contested consent decrees that were approved by this court. Class counsel also strongly recommended acceptance of the consent decree, which he described as a "remarkable victory" for the plaintiffs.

While we appreciate and sympathize with the individual complaints and concerns expressed by the objectors, we remind the objectors and all other parties that a consent decree is a compromise that cannot possibly satisfy every class member's particular desires; rather, the decree must embody the best settlement available to the class as a whole. This record indicates that gains reached during the settlement could have been delayed, jeopardized or even lost entirely if litigation had continued. Thus, compromises here were fully justified so as not to gamble with the rights of everybody to satisfy the complaints of some.

We hold therefore that under the applicable legal standards, the district court's order entering this consent decree is

AFFIRMED.