Paris KINCADE et al.,
Plaintiffs–Appellants,

v.

GENERAL TIRE AND RUBBER CO.,
Defendant–Appellee,

and

William F. Halliburton,
Plaintiff–Appellee.

Nos. 78–2863, 78–2864.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1981.

502

E. Brice Cunningham, Dallas, Tex., for plaintiffs–appellants in both cases.

Carrington, Coleman, Sloman, Johnson & Blumenthal, Marvin S. Sloman, Peter Tierney, Dallas, Tex., John W. Walker, Little Rock, Ark., for defendants–appellees in both cases.

Edward R. Dye, Akron, Ohio, for plaintiff–appellee in No. 78–2864.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

This appeal involves a class action brought against General Tire and Rubber Company ("General Tire") by six named plaintiffs on behalf of a class consisting of more than 500 members. Five of the original six named plaintiffs, joined by one other class member, appeal the trial court's approval of a settlement in this case. We affirm the trial court's approval of the settlement.

### Background

Plaintiffs' complaint, filed in February of 1975, alleged that General Tire had engaged in plantwide racial discrimination in employment at its Waco, Texas, plant. During the discovery stage of the lawsuit, from 1975 until the summer of 1977, depositions of the named plaintiffs and of General Tire's plant manager and personnel manager were taken; interrogatories and supplemental interrogatories were answered; and General Tire's personnel records were produced. The settlement at issue was negotiated over a period of several months. On October 25, 1977, the parties filed a proposed settlement with the trial court. Under this agreement General Tire established goals and timetables for improving job opportunities for blacks, particularly in the skilled trade and supervisory positions. To achieve these goals, the agreement further provided for supervisory training programs, counseling for minorities with respect to advancement possibilities, and educational assistance. In addition, the settlement provided for the establishment of a fund of $60,000,[1] the precise distribution of which among the class was not addressed.

On February 8, 1978, the district judge directed the parties to file briefs in support of the proposed settlement agreement and ordered the plaintiffs to file a schedule setting forth the distribution of the settlement fund among the class. On March 8, 1978, the distribution schedule was filed; the amounts listed to be paid to each beneficiary of the fund were determined pursuant to a formula that had been submitted to the district court some two weeks earlier. Under the distribution formula the $60,000 was to be divided among some 100 class members who had been employed by General Tire for an eighteen–month period from October 1971 to April 1973, according to the total years of service each participating employee had with General Tire. Each of the six named plaintiffs qualified for participation in the distribution of the fund; their awards ranged from $263.78 to $1,167.62.

On March 16, 1978, the district court certified the case as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure; defined the class; designated the named plaintiffs as class representatives; and appointed John W. Walker ("Walker") as general counsel for the class. On the

---

1. The agreement actually provided for a fund of $90,000, but also stated the parties' agreement that a reasonable fee for plaintiffs' attorney was $30,000. Thus, the amount of the fund available for distribution to the class was $60,000. The issue of the trial judge's duty to evaluate independently the reasonableness of the attorney fee in accordance with the standards established by *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), has not been raised on appeal. Accordingly, we are not faced with the problem addressed by our court in *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980). Similarly, the effect of the class attorney's negotiation of his fee simultaneously with his negotiation of the settlement is not before us. *See Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 n.71 (5th Cir. 1978).

following day the trial judge signed an order tentatively approving the settlement agreement, including the proposed distribution of the $60,000. The order also provided that notice be sent to all class members of the terms of the settlement agreement, the submission of objections to the proposed settlement, and the hearing for final approval of the agreement, which was to be held on May 31, 1978.

About two weeks later, the six named plaintiffs filed with the district court a letter that they had written to Walker. This letter stated their refusal to accept the proposed settlement; while they objected in general terms to the affirmative action provisions of the agreement, the size of the settlement fund, and the representation they had received from Walker, their primary complaint was that the entire settlement fund should have been distributed solely to them because they had brought the lawsuit and "born the burden of all the testimony." Several weeks later, Paris Kincade, one of the named plaintiffs, filed another objection to the proposed settlement in which he requested that his claim, which he estimated was worth $75,000, be tried separately.

█ Thirteen additional objections were filed in response to the notice of the proposed settlement. On May 31, 1978, the district court held a hearing at which nine persons, including three of the named plaintiffs, voiced objections to the settlement. On July 5, 1978, the district judge made findings of fact and conclusions of law[2] in which most of the various objections to the proposed settlement were addressed, though rather briefly. The judge found the settlement agreement to be fair, adequate, and reasonable and not the product of collusion; accordingly, the settlement was approved. Appellants then filed a timely appeal of the trial court's approval of the settlement.

2. Appellants correctly assert that these findings and conclusions were adopted verbatim from those submitted by counsel for the parties. However, while this procedure is not favored, it clearly does not constitute reversible

*Issues Raised on Appeal*

The threshold issue presented by this appeal is whether the appellants seek to have the settlement set aside with respect to the entire class or only with respect to appellants themselves. The objectors' brief contains three indications that they are appealing the trial court's approval of the settlement on behalf of the class as a whole. First, in the Summary of Argument section of the brief, the appellants state that they are "entitled ... to have said Compromise Settlement Agreement set aside. In the alternative, Appellants claim that the agreement should be set aside as to the individual Appellants ...." Second, the argument section of the brief makes the contention that, under the standards set forth in *Cotton v. Hinton*,[3] the trial judge abused his discretion in approving the settlement. Third, one portion of the argument section of the brief concludes that "[f]or these additional reasons the Trial Court's judgment should be reversed and the Compromise Settlement Agreement set aside, at least as to the individual named appellants ...."

█ As a general rule, briefs are read liberally with respect to ascertaining what issues are raised on appeal; in light of the portions of the brief referred to above, application of the general rule normally would result in our concluding that the appellants have adequately raised the issue of the trial court's approval of the settlement with respect to the class as a whole. For several reasons, however, we find that the only issue presented on this appeal is whether the trial court erred in approving the settlement with respect to the appellants over their express objections. First, the appellants have indicated three times that they are seeking to have the trial court's approval of the settlement set aside only as to them. In the Relief Requested section of their brief the appellants pray:

error. *Midland Telecasting Co. v. Midessa Television Co.*, 617 F.2d 1141, 1144 n.5 (5th Cir. 1980).

3. 559 F.2d 1326 (5th Cir. 1977).

That the Judgment entered by the Trial Court below, be reversed and this case remanded to the Trial Court below, with instructions that said Compromise Settlement Agreement be set aside as to these named Appellants, and set aside as to them as the representatives of the Class and as to the objecting members of the Class. That upon remand, and additional hearings herein and/or Trial, that Judgment be entered for the Appellants named herein granting them damages for back wages, front pay, and for the other relief prayed for in their Amended Complaint, and they recover attorneys' fees incurred by them in this Court. Appellants further pray that the Appellees be enjoined from the actions complained of herein and for such other relief as the Court may deem proper.

Following oral argument the appellants submitted two letter briefs which further reflect that they are objecting to application of the settlement agreement to them and not to its application to the class. The first states that "Appellants submit that there was a total abuse of the discretion by the Trial Court in approving the Compromise Settlement as to these Appellants and cutting off their right to have their claims adjudicated, irregardless of what action the Court took with respect to the Class aspects of the case." The letter brief concludes, "[t]herefore, these appellants submit that the Compromise Settlement Agreement as to them should be set aside in all respects" and does not request that the settlement be set aside as to the class. Similarly, the second letter brief concludes:

all that the individual named Plaintiffs and the one Appellant class member seek is to have their day in Court, because they did not receive adequate procedural protection by Counsel "purportedly" representing them or the Trial Court. Regardless of what their demands are, they submit that they have a right to have their individual claims heard in the appropriate Court, win, loose [sic] or draw. This they have not received. This they request this Court to grant by a reversible [sic] as to them individually, thereby granting them their day in Court.

There is no request that the settlement be set aside as to the class.

In addition to these express indications that the only relief sought by appellants is that the settlement be set aside as to them, there are other reasons why we find that the issue of whether the settlement is fair, adequate, and reasonable with respect to the class as a whole is not raised. Appellants' argument that, under *Cotton v. Hinton, supra*, the trial judge abused his discretion in approving the settlement is based on the fact that the settlement was approved even though the appellants objected to its terms. The argument does not address the substantive terms of the settlement in an effort to show that, in fact, it was not fair, adequate, and reasonable. Rather, the argument is that, once the appellants had voiced their objections to the settlement, and the district judge should not, indeed could not, have approved it regardless of whether its terms were fair, reasonable, and adequate. Thus, the portion of the brief asserting an abuse of discretion under *Cotton v. Hinton, supra*, concludes:

For the reasons hereinabove mentioned, these Appellants respectfully contend that the Trial Court abused its discretion in approving the Compromise Settlement Agreement, which includes provisions with respect to them. It is their contention that they had a right to have a trial of their individual complaints and their cause of action separate and distinct from the Class.

In a similar vein, the appellants' brief contains two related arguments concerning an individual's constitutional right "to have a trial of his case" and his right not to have his case "settled by anyone else, including the attorney that is supposed to be representing him without [his] approval, consent or authorization." Neither of these two arguments relates to the settlement with respect to the class.

A final reason for our finding that the appellants have not raised the issue of the fairness, adequacy, and reasonableness of

the settlement with respect to the class is that their interests have diverged from those of the class. In their initial letter filed with the district court objecting to the settlement, the named plaintiffs claimed that the entire fund should be divided among them to the exclusion of the class because they initiated the lawsuit and pursued it over a period of several years. Because of this clear conflict of interest between the appealing class representatives and the class, we see no reason to construe their arguably ambiguous brief as an appeal on behalf of the class that the settlement was unfair to the class as a whole.[4]

■ For the reasons discussed above, we find that this appeal presents the issue of the appellants' right to have their claims tried separately rather than compromised under a settlement agreement to which they explicitly objected.[5]

### The Right to Opt Out of a Rule 23(b)(2) Class Action Settlement

Appellants' argument is twofold: first, "[i]t is Plaintiffs' contention that irrespective of the action taken by the Court with respect to the Class action, that they as individual Plaintiffs had a constitutional right, if they desired, to have a trial with respect to their individual claims." Second, they argue that the settlement agreement could not be "binding upon them . . . in the

absence of a finding that these Plaintiffs had authorized their attorney to settle their case or to consent to the Compromise Settlement Agreement."

■ The argument that appellants were deprived of their constitutional right to their "day in court" is apparently an argument that the settlement agreement violated their right to due process because it did not provide them a means of opting out of the class to pursue their claims individually. This argument is without merit. The right to opt out of a class in a pending class action is provided for in Rule 23(c)(2) of the Federal Rules of Civil Procedure; significantly, that right, as well as the right to notice, is explicitly limited to class actions brought under Rule 23(b)(3). This suit was brought under Rule 23(b)(2), as are most class actions in the civil rights area;[6] accordingly, a right for appellants to opt out in this case is not provided by the Federal Rules of Civil Procedure.[7]

■ While it is clear that the Federal Rules do not provide objectors a right to opt out of class actions brought under Rule 23(b)(2) that proceed to trial, we must also address both the fact that this case was settled rather than tried and the constitutionality of prohibiting an objecting class member from opting out of a class action

---

**4.** We note that from a class of over 500 members only one person who was not a named plaintiff has joined in this appeal. While that appellant does not share the conflict of interest of the named plaintiff appellants, we do not find his presence in this appeal sufficient to negate the conflict of interest so clearly evident from the objections filed with the district court. Furthermore, the fact that over 500 other class members declined to join in this appeal and that less than ten of them voiced any objections to the settlement is at least some indication that the class members as a group did not think the settlement was unfair. *Cotton,* 559 F.2d at 1331.

**5.** A related issue, not explicitly raised by this appeal but nevertheless underlying it, is whether the named plaintiffs should have been accorded preferential treatment rather than treated as any other class member in the distribution of the settlement fund. As the Fourth Circuit stated in *Flinn v. FMC Corp.,* 528 F.2d

1169, 1176 (4th Cir. 1975), by choosing to bring their action as a class action, the named plaintiffs "disclaimed any right to a preferred position in the settlement." While this rule clearly does not require that all class members participate equally in a settlement (indeed, the settlement in this case did not so provide), it does negate any claim a named plaintiff might have to preferred treatment simply by reason of his status as a class representative.

**6.** "[S]ubdivision (b)(2) was added to Rule 23 in 1966 primarily to facilitate the bringing of class actions in the civil rights area." 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1775 (1972).

**7.** For a discussion of the reasons that notice and the right to opt out are not provided for class actions brought under Rule 23(b)(2), *see* 7A C. Wright & A. Miller, *supra,* § 1786 at 143–44.

settlement. For several reasons we find that the right to opt out, which is denied when a Rule 23(b)(2) case is tried, also need not be provided when such a case is settled. In each instance a determination has been made that the named plaintiffs will adequately represent the class and, consequently, that the attorney for the class is qualified to represent the class.[8] Further, additional protections are afforded class members when a class action is settled. Under Rule 23(e), "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class . . . ." In addition, objecting class members must be given the opportunity to be heard, and the trial court is to "examine the settlement in light of the objections raised and set forth on the record a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response." *Cotton,* 559 F.2d at 1331. The settlement is not to be approved unless the trial judge, after "an analysis of the facts and law relevant to the proposed compromise," determines it to be "fair, adequate and reasonable and . . . not the product of collusion between the parties." *Id.* at 1330.

There is also an important policy consideration dictating that objectors to the settlement of a Rule 23(b)(2) class action need not be provided an opportunity to opt out of the settlement. "Particularly in class action suits, there is an overriding public interest in favor of settlement," *id.* at 1331; allowing objectors to opt out would discourage settlements because class action defendants would not be inclined to settle where the result would likely be a settlement applicable only to class members with questionable claims, with those having stronger claims opting out to pursue their individual claims separately.[9] Accordingly, unless the Constitution dictates otherwise, the rule denying the right to opt out to class members in a Rule 23(b)(2) case that goes to trial is also applicable when the case is settled.[10]

■ The appellants' argument that they have a constitutional right to have a trial of their individual claims is easily disposed of. The due process clause of the Constitution is satisfied when a Rule 23(b)(2) class action is settled without providing objectors a means of opting out because the objectors are (1) adequately represented by the named plaintiffs, (2) represented by an attorney who is qualified, (3) provided with

---

8. *Gonzales v. Cassidy,* 474 F.2d 67, 72–73 n.10 (5th Cir. 1973).

9. We emphasize that this case involves the right to opt out of the settlement of a Rule 23(b)(2) action. We need not, and do not, address the question of whether, in a Rule 23(b)(3) action, class members who chose not to exercise their right to opt out by the date specified in the Rule 23(c)(2) notice provided them are to be given an additional opportunity to opt out of a subsequently negotiated settlement.

10. In *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157 (5th Cir. 1978), our court reversed the district court's approval of a back pay decree in a class action. The back pay decree, which we found constituted a consent settlement rather than a judgment of the court, *id.* at 1168–75, provided a means by which class members could effectively opt out of the settlement. *Id.* at 1166 n.2. In reversing the back pay decree, we provided guidance to the district court with respect to the rights of objecting class members to opt out of any back pay settlement that might be reached on re-

mand. While noting that in Rule 23(b)(2) cases "opting out of the lawsuit altogether after a back pay settlement is not permitted," we stated that if, on remand, "another settlement of the back pay dispute is reached, the district court should provide those claimants who decide to opt out of the settlement with an opportunity to assert their individual claims in this action." *Id.* at 1220.

We do not find *Pettway* contrary to our holding that a Rule 23(b)(2) class action can be settled without providing objectors a means of opting out. *Pettway* was not a case in which our court was asked to overturn a settlement that did not provide the right to opt out. The back pay decree negotiated by the parties and approved by the district court in *Pettway* allowed objectors to opt out of the lawsuit altogether; our discussion of the opt–out question in that case indicated that where an opt–out procedure is included in the settlement of a Rule 23(b)(2) action, it should allow the objectors to assert their individual claims in the same action rather than in an independent lawsuit.

notice of the proposed settlement, (4) given an opportunity to object to the settlement, and (5) assured that the settlement will not take effect unless the trial judge–after analyzing the facts and law of the case and considering all objections to the proposed settlement–determines it to be fair, adequate, and reasonable. *Robertson v. National Basketball Association*, 556 F.2d 682, 685–86 (2d Cir. 1977).[11]

*Authority of the Class Attorney to Settle*

■ Appellants' argument that the settlement cannot be applied to them because they did not authorize their attorney, Walker, to settle the case or otherwise consent to the settlement is also easily disposed of. Because the "client" in a class action consists of numerous unnamed class members as well as the class representatives, and because "[t]he class itself often speaks in several voices . . ., it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole . . . ." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). Because the unique nature of the attorney–client relationship in a class action, the cases cited by appellants holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable.

Nevertheless, in *Pettway* our court found the "unanimous disapproval of the back pay settlement by the active named plaintiffs" a "significant factor" in its decision to reverse the district court's approval of the settlement. 576 F.2d at 1216. However, the weight afforded the objections of the named plaintiffs in *Pettway* was based in part on the fact that there was "no showing of any conflict of interest, either actual or potential, between the representatives and the class . . . ." *Id.* Here the claim of the

named plaintiffs to the entire settlement fund clearly distinguishes this case from *Pettway* and fatally undermines the argument that the objections of the named plaintiffs should have precluded the trial court from approving the settlement. This case is a prime example of one in which "the assent of named plaintiffs is not a prerequisite to the approval of a settlement." *Id.*

*Conclusion*

Because the appellants had no right to opt out of the settlement of this class action, and because their assent was not a prerequisite to the trial court's approval of the settlement, we hold that the appellants are not entitled to have the settlement set aside as to them. Accordingly, the district court's approval of the settlement is AFFIRMED.

---

11. Subsequent to the preparation of this opinion, our court decided *Penson v. Terminal Transport Co., Inc.*, 634 F.2d 989 (5th Cir. 1981). In *Penson* we held that although a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class, even when monetary relief is sought and made available, the district court, "acting under its Rule 23(d)(2) discretionary power, may require that an opt-out right and notice thereof be

given should it believe that such a right is desirable to protect the interests of the absent class members." *Id.* at 994. *See also Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1978) (judgment in a Rule 23(b)(2) action in which only equitable relief was sought does not bar a subsequent suit for damages filed by a class member who did not receive notice of the prior class action).