925 F.2d 1464
 55 Fair Empl.Prac.Cas. 224,
55 Empl. Prac. Dec. P 40,572
Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dennis Hazen HUGULEY, et al., (Class Action) Plaintiffs-Appellees,
Larry Dodson, et al., (Objectors-Class Action) Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 89-2172.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 83-72864; Feikens, J.
 E.D.Mich., 128 F.R.D. 81.
 AFFIRMED.
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs (objectors) appeal from the district court's approval of a consent decree resolving a suit filed pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. Sec. 2000e, et seq., 42 U.S.C. Sec. 1981, and the Elliott-Larsen Civil Rights Act, Mich.Comp.Laws Ann. Sec. 37.2101, et seq. The suit was brought on behalf of black salaried employees of General Motors. The employee class claimed that General Motors' performance appraisal system discriminated against them.
 
 
 2
 The objectors make the following arguments: (1) the class of objectors has standing on appeal; (2) the trial court abused its discretion when it failed to allow members of the class to opt out, after certifying this as a class action pursuant to Fed.R.Civ.P. 23(b)(2); and (3) the trial court abused its discretion when it approved the consent decree over the objections of 15 percent of the plaintiff class, because both the compensation afforded and the monitoring system provided by the consent decree were inadequate. We find the objectors' arguments without merit and, accordingly, affirm.
 
 I. FACTS
 
 3
 The original complaint was filed in 1983 by Laras Eason on behalf of himself and all similarly situated black salaried General Motors employees. Several amendments to the original complaint were filed. The third amended complaint was filed in 1986 and alleged that General Motors' performance appraisal system was discriminatory with respect to promotions, demotions, layoffs, recalls, salary increases, and transfers.
 
 
 4
 The district court certified the class pursuant to Fed.R.Civ.P. 23(b)(2) on October 16, 1986, over General Motors' objections.[1] After extensive discovery and lengthy settlement negotiations, the parties proposed a consent decree to the court on January 29, 1989.[2] The district court preliminarily approved the consent decree on February 3, 1989. The consent decree provides the following: (1) a computerized system will monitor the performance appraisal system and notify General Motors when the employment statistics relating to black employees vary significantly from those of white employees; (2) General Motors, when informed of statistically significant deviations, will make necessary adjustments to offset any discrepancies; (3) monetary relief, which will be provided in the form of one-time payments to former employees who are members of the class, for named plaintiffs and anecdotal witnesses, and attorneys' fees. Permanent salary adjustments for current employees as well as attorneys' fees were also included in the proposed consent decree.
 
 
 5
 Notice was given to all members of the class that objections to the proposed consent decree were required to be filed by March 31, 1989; this time was subsequently extended through April 7, 1989. A fairness hearing was held on June 26 and 27, 1989. All members of the class were given notice of the hearing.
 
 
 6
 At the fairness hearing, objectors to the consent decree were given the opportunity to present their arguments as to why the consent decree should not be approved by the court. The objections presented to the court encompassed the issues raised on appeal and several additional issues. These additional issues included, among sundry minor other issues, allowing the pool for monetary recovery for former employees to be dependent on the number of employees making claims, which the district court agreed was inappropriate, and releasing claims for discrimination by General Motors in the future, which the district court concluded was not part of the decree.
 
 
 7
 After the fairness hearing, the court gave its final approval to the consent decree because it found the terms to be fair, reasonable, and adequate. While approving the consent decree, the court also denied a motion for substitution of counsel for the plaintiff class. The motion for substitution of counsel was supported by those members of the class who were dissatisfied with the settlement. This appeal followed.
 
 II. STANDING
 
 8
 Although defendant argues that the objectors lack standing to appeal the terms of the consent decree, we choose nonetheless to address the merits of the issues raised by the objectors. In light of the fact that we find the objectors' claims wholly without merit, our assumption in favor of standing for the objectors is without consequence and should not be construed as a decision on the merits on the standing issue.
 
 III. INABILITY TO OPT OUT
 
 9
 The objectors argue that they should have been permitted to opt out of the class. There is no absolute right to opt out of Fed.R.Civ.P. 23(b)(2) class actions, however. Laskey v. United Automobile Workers, 638 F.2d 954, 956 (6th Cir.1981); see King v. South Cent. Bell Tel. & Tel., 790 F.2d 524, 530 (6th Cir.1986) (plaintiff "could not opt out because the action did not include that privilege"); 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1775 (1986) ("ability of a class member to exclude himself from the judgment will depend on which subdivision [ (b)(2) or (b)(3) ] is deemed controlling").[3] Even if we were to accept the objectors' argument that we should adopt an abuse of discretion standard as announced in Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir.1983), the trial court in the current case did not abuse its discretion when it failed to provide class members with the ability to opt out.
 
 
 10
 The policy in favor of not allowing class members to opt out of 23(b)(2) class actions stems from concern that "defendants would not be inclined to settle where the result would likely be a settlement applicable only to class members with questionable claims, with those having stronger claims opting out to pursue their individual claims separately." Kincaide v. General Tire & Rubber Co., 635 F.2d 501, 507 (5th Cir.1981). Thus, "[l]awsuits alleging class-wide discrimination are particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single proof and subject to a single injunctive remedy." Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir.), cert. denied, 429 U.S. 870 (1976). Additionally, we have said that "[i]n the interests of judicial economy and efficiency," i.e., to avoid needless duplicitive suits, courts should generally certify classes pursuant to 23(b)(2) when the class members are seeking injunctive relief and, correspondingly, not allow class members to opt out. Laskey, 638 F.2d at 956.
 
 
 11
 Although the consent decree before us awards some monetary relief in the form of back pay and compensation for time spent in the litigation process, the crux of the settlement involves equitable relief in the form of a monitoring system for the defendant's performance appraisal system. The class members' complaint centered on the discriminatory effects of General Motors' performance appraisal system. The remedy, i.e., General Motors' commitment to respond to any statistically significant differences highlighted by the computer monitoring system, necessarily is a remedy for all employees who were subject to evaluations based on the performance appraisal system. In light of the systemic nature of the problem and the magnitude of the remedy, the incentive for the defendant to enter into a consent decree would have been non-existent if class members had been allowed to opt out of the class. In fact, this is a case where to permit opting out may even have been an abuse of discretion due to the nature of the complaint.
 
 IV. FAIRNESS OF CONSENT DECREE
 
 12
 The objectors also argue that the trial court abused its discretion when it approved the consent decree and held that it was "fair, reasonable, adequate, and consistent with the public interest in settling disputes." (App. at 614).[4]
 
 
 13
 They argue essentially that the decree should not have been approved in light of the number of objectors, the disproportionate award to named plaintiffs and anecdotal witnesses, the inadequate awards for back pay and salary adjustments, and the ineffectiveness of the computer monitoring system to change the source of discriminatory practices at General Motors.
 
 
 14
 It is well established that "[t]he ultimate issue the court must decide at the conclusion of the [fairness] hearing is whether the decree is fair, adequate, and reasonable. The Court has no occasion to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir.1983) (citation omitted). The factors a court must consider before approving a consent decree include "the fairness of the decree to those affected, the adequacy of the settlement to the class, and the public interest." Id. With these factors in mind, we will examine the plaintiffs' arguments.
 
 
 15
 The objectors argue that, because so many members are dissatisfied with the consent decree, the consent decree's unfairness is apparent. Notably, only 15 percent, or 1,500 members, of the class have any objections to the settlement. Assuming the objectors are properly representing the actual number of dissatisfied class members, an assumption that the other class members and defendant adamantly contest, a 15 percent rate of dissatisfaction, standing alone, would not suggest that the court abused its discretion in approving the settlement. See, e.g., Grant v. Bethlehem Steel Corp., 823 F.2d 20 (2d Cir.1987) (settlement approved over objections of 36 percent of class); Reed v. General Motors Corp., 703 F.2d 170 (5th Cir.1983) (settlement approved over objections of 40 percent of class).
 
 
 16
 The objectors take issue with the one-time distribution of $322,496 to the 88 named plaintiffs and anecdotal witnesses. This award was meant to compensate them for their efforts expended throughout the litigation. This issue is not properly raised on appeal. The district court noted that "there have been no objections criticizing these awards as too large. Objections, rather, have been made that the awards are too small." (App. at 608).
 
 
 17
 Objectors also assert that the awards for back pay and salary increases are inadequate. The district court enumerated these awards as follows:
 
 
 18
 Of nearly 10,000 class members, approximately 2,800 are ex-employees who will share in a pool of $1-1.6 million, depending on the number of claims filed.... Fourteen percent of the incumbent employee class whose salaries are furthest below statistical white salaried employees will receive first-year base salary adjustments ranging between $800-1,200. This equals a first-year distribution of base salary increases of $1 million to approximately 1,000 incumbent employee class members....
 
 
 19
 (App. at 607). The district court concluded that the thrust of affirmative relief for current employees is the computer monitoring system and the changes in the disparate treatment of black salaried employees that it will promote. We agree.
 
 
 20
 Finally, we find objectors' argument that the monitoring system fails to ameliorate the cause of discrimination equally without merit. The entire purpose of the monitoring system is to draw General Motors' attention to areas in which there is a disparity in the treatment of blacks as compared to whites. The plaintiff class' complaint alleged that there were disparities along racial lines in General Motors' performance appraisal system as they related to promotions, demotions, layoffs, etc. The monitoring system addresses precisely these concerns.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The class was further limited to employees in the states of Michigan, Ohio, and Indiana who were subject to General Motors' performance appraisal system between October 8, 1982, and September 25, 1986. Employees in the legal and personnel departments were excluded. In total, the class consisted of nearly 10,000 current and former employees
 General Motors filed a petition for a writ of mandamus with this circuit challenging the district court's certification of the plaintiff class. Although the petition for mandamus was not granted, the court of appeals ordered an evidentiary hearing. The parties subsequently agreed, as part of their settlement negotiations, to the certified class and petitioned the court of appeals to hold the mandamus petition in abeyance pending approval of a consent decree between the parties.
 
 
 [2]
 Discovery included the following: 1) furnishing 500 randomly selected personnel files of both white and black salaried employees; 2) providing computer tapes containing personnel information on all past and present General Motors employees who worked in the certified geographic area during 1982-1986; and 3) numerous depositions of General Motors officials concerning the operations of the performance appraisal system and training associated with the use of the system
 
 
 [3]
 See also Mitchell v. Dutton, No. 87-5574, slip op. at 10-11 (6th Cir. Jan. 3, 1989)
 
 
 [4]
 Plaintiffs cannot voluntarily decline to pursue a class action once it has been filed. Fed.R.Civ.P. 23(e) specifies:
 (e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.