Larry WILLIAMS, et al.

v.

The CITY OF NEW ORLEANS, et al.

Civ. A. No. 73–629.

United States District Court,
E.D. Louisiana.

July 23, 1987.

Judith Reed, New York City, Ronald Wilson, New Orleans, La., for plaintiff.

Ralph Dwyer, New Orleans, La., for New Orleans Civ. Service Com'n.

Thomas Milliner, New Orleans, La., for City of New Orleans.

Robert Moore, Nancie Marzulla, for U.S.

Sidney Bach, New Orleans, La., for Martin Venezia, et al.

Dale Wilks, New Orleans, La., for Horace Perez, et al.

Lynne Wasserman, Metairie, La., for Cindy Duke, et al.

SEAR, District Judge.

This case came before me for a fairness hearing on a proposed consent decree on November 13, 1986. After several months work by the parties and the Court devoted to resolving concerns raised by a related lawsuit, *Rodriguez v. Belsom*, Civil Action No. 83–6169, Section G, [Available on WESTLAW, DCT database], I have entered the consent decree.

## INTRODUCTION

In 1973 Larry Williams and twelve other black New Orleans police officers and applicants brought this action against the City of New Orleans, the New Orleans Civil Service Commission and various public officials. On behalf of a class of similarly situated persons, the plaintiffs alleged that the defendants had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–2000e–17, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the thirteenth and fourteenth amendments to the United States Constitution.

The procedural history of this case is recounted in my opinion of June 11, 1982,[1] in which I explained my reasons for refusing to sign a consent decree offered by the parties. After an unsuccessful appeal to the United States Court of Appeals for the Fifth Circuit, the parties have elected not to proceed to trial, but instead have offered a revised version of the consent decree for my consideration.

## THE REVISED DECREE

The first proposed decree is described in detail in my prior opinion.[2] I will describe only the changes the parties have made in response to that opinion.

### A. Elimination of the Quota

The parties have deleted the first sentence of paragraph VI of the original decree, which was entitled *Promotions*. That sentence contained the one-for-one, black-to-white promotion quota I found was unsupported by the evidence and was an unreasonable burden on non-black officers.[3] In its place the parties have added paragraph XVIII, entitled *Termination*. This paragraph provides that the consent decree will terminate upon expiration of two promotion eligibility lists for the ranks of sergeant, lieutenant and captain.

In addition, the parties have amended paragraph VI-C, entitled *Future Promotions to Additional Positions*, to delete the reference to the one-for-one promotion ratio. In its place, the parties have specified that vacancies in the "supernumerary" position will be filled by qualified black officers until the expiration of two promotion lists for each rank.

1. *Williams v. City of New Orleans*, 543 F.Supp. 662 (E.D. La.1982), *aff'd* 729 F.2d 1554 (5th Cir.1984) (en banc).

2. *Id.* at 668–70.

3. *Id.* at 684–86.

## B. Selection Procedures

Paragraph VII, entitled *Eligibility to Sit For Promotional Examination* has been changed to replace the fixed one year experience requirement for promotion with a requirement that experience requirements be fixed by the psychometricians based on the results of job analyses.

Paragraph IX–C, entitled *Development of New Selection Procedures, Promotions,* has been redrafted to permit the results of the written test to be used in combination with the results of the oral test for determining the placement of candidates within bands. The relative weights of the oral and written components as well as the number and size of the bands used for ranking candidates will be set by the psychometricians. Finally, the circumstances under which separate frequency distributions might be used for scoring black and white promotion candidates have been more precisely spelled out, and any use of race-conscious scoring will require prior court approval.

## C. Attorneys Fees

Paragraph XVI, entitled *Attorneys Fees, Costs and Expenses,* expressly permits the plaintiffs to seek additional attorney's fees if work is required in the future.

### REVIEW

A consent decree in a class action Title VII case is subject to special scrutiny. The district court must find the decree fair, adequate and reasonable and the court must

> examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute or jurisprudence. This requires a determination that the proposal represents a reasonable factual and legal determination based on the facts of record....

*United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir.1981) (en banc); *Williams,* 729 F.2d at 1559. As in my prior opinion, this inquiry focuses on three criteria: (1)

whether based on the record a reasonable factual and legal predicate exists for the decree; (2) whether it constitutes a fair and reasonable settlement with respect to the plaintiff class; and (3) whether its effect on third parties is unreasonable or unlawful.

## A. Factual and Legal Basis

As recited in my prior opinion, the plaintiffs demonstrated at the first fairness hearing that had this case gone to trial they could have established a prima facie case of intentional discrimination against black officers. Accordingly, there is a legal and factual basis to support a judicial remedy embodied in a consent decree. *Cf. Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 106 S.Ct. 1842, 1852–57, 90 L.Ed.2d 260 (O'Connor, J. concurring).

Of course, that there exists a factual basis for a judicial remedy is not to say that the particular remedy selected is narrowly enough tailored to the asserted remedial goal. *Id.* 106 S.Ct. at 1857; *Fullilove v. Klutznick,* 448 U.S. 448, 484, 100 S.Ct. 2758, 2777, 65 L.Ed.2d 902 (1980). That issue is reserved for discussion hereafter in part C.

## B. Fair, Adequate and Reasonable?

In assessing whether the proposed consent decree is fair, adequate and reasonable, I must consider six factors: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representatives, and the absent class members. *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. Unit A 1982).

I thoroughly analyzed the first proposed consent decree in light of these

factors in my prior opinion.[4] There is no reason to repeat that analysis here. The only significant change in the decree is the deletion of the one-for-one quota which I found was impermissible. In all other respects the decree provides relief almost identical to that provided by the first proposed consent decree and for the reasons previously expressed, I find that the decree is a fair, adequate and reasonable settlement to this litigation.

The objections of the class members to the revised decree do not alter my prior conclusion. Many of these objections are trivial, irrelevant or seek to place unreasonable restrictions on the operation of the New Orleans Police Department and Civil Service Commission.

Many of the class members object to the deletion of the one-for-one quota. Since based on the evidence a one-for-one quota could not be supported even if the plaintiffs were to proceed to trial, the absence of the quota does not render the decree inadequate.

Many of the class members also object to the manner in which plaintiffs' counsel have handled the case. I find those objections to be without merit and find that plaintiffs' counsel have continued to perform diligently and with professional competence in all aspects of representation.

Finally, class members raised objections to the fact that a sergeant's examination was given in 1984 without the participation of the plaintiffs' psychometrician. This objection too is without merit. The defendants were under no obligation to consult the plaintiffs' psychometrician with respect to the 1984 exam. In the revised consent decree the plaintiffs have agreed not to challenge the results of that exam, which is a reasonable quid pro quo in light of the extensive relief provided to the class by the decree without the expense and uncertainty associated with a trial.

**4.** *Williams,* 543 F.Supp. at 674–76.

**5.** *Williams,* 543 F.Supp. at 676–86.

## C. Effect on Third Parties

A consent decree containing race-conscious remedies must be designed to correct the discrimination complained of while avoiding unnecessary burdens on the rights of others. That is, the race-conscious provisions proposed in the consent decree must be "narrowly tailored" to remedying the discrimination alleged. *Fullilove,* 448 U.S. at 484, 100 S.Ct. at 2778.

In my prior opinion, I found that the consent decree was narrowly tailored to remedying the prior discrimination by the New Orleans Police Department except for the provision requiring the promotion of blacks and whites in a one-to-one ratio until the New Orleans Police Department was composed of fifty percent black officers at all levels.[5] That provision, which was unsupported by the evidence and an unreasonable burden on non-black officers, has been deleted from the consent decree.

The remaining race-conscious provisions were approved in my prior opinion[6] and no intervening change in the facts or the law suggests that that approval should be reconsidered today.

Accordingly, the proposed consent decree is APPROVED.