**BLACK FIRE FIGHTERS ASSOCIATION OF DALLAS, et al., Plaintiffs,**

v.

**CITY OF DALLAS, TEXAS, Defendant,**

v.

**DALLAS FIRE FIGHTERS ASSOCIATION, Intervenor.**

No. 3:88–CV–2304–A.

United States District Court, N.D. Texas, Dallas Division.

Nov. 5, 1992.

Roger Earl Albright, Cloutman Albright & Bower, Dallas, Tex., for plaintiffs.

Craig Lee Hopkins, Francisco Javier Garza, City Attorney's Office, Dallas, Tex., for City of Dallas, Texas.

Hal Keith Gillespie, David Kohlman Watsky, Gillespie Rozen & Tanner, Dallas, Tex., for Dallas Fire Fighters Ass'n.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

On October 1, 1992, came on for hearing the joint motion of plaintiffs, Black Fire Fighters Association of Dallas, Joe M. Spigner, Terrance Houze, Calvin Jones, Kenneth Parker, Glenn Williamson, Alonza Williams, Leslie Browne, and all others similarly situated, and defendant, City of Dallas, Texas, for entry of order approving a compromise settlement (filed August 19, 1992). Plaintiffs, defendant, and intervenor, Dallas Fire Fighters Association, appeared by and through their attorneys of record. The court, having considered the motion, the testimony at the hearing, the arguments of counsel, applicable authorities, and the record in this action, finds that the motion should be denied.

The settlement proposal submitted by plaintiffs and defendant is attached to the August 19, 1992, joint motion for entry of order approving a compromise settlement. The court need not expound upon its terms, other than to note that the agreement calls

for payment by defendant of $572,000.00 attributable to class back pay and $250,000.00 as attorney's fees and for defendant to promote from among qualified African Americans an additional twenty (20) persons to the rank of driver, an additional seven (7) persons to the rank of fire lieutenant, and an additional one (1) person to the rank of fire prevention lieutenant. Intervenor opposes the settlement agreement because of the so-called "skip promotions" that are proposed to be made.

■ The court recognizes that intervenor can not block approval of the proposed settlement by the withholding of its consent thereto. *Fire Fighters v. Cleveland*, 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). And, the court is not disapproving the proposed settlement agreement solely because of intervenor's opposition.

■ The court's inquiry focuses on two criteria. First, the court looks at whether the settlement proposal is fair, adequate and reasonable. Second, the court examines whether approval of the settlement proposal will unreasonably or unlawfully impact third parties. *Williams v. City of New Orleans*, 116 F.R.D. 561, 563 (E.D.La. 1987).[1]

■ The factors relevant to determining whether the settlement proposal is fair, adequate and reasonable are: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. Unit A 1982).

As the court discussed with the parties at the hearing, fraud or collusion is not an issue. The case is complex, has been expensive, and has already been pending for several years. However, discovery is completed and the case is set for trial November 9, 1992. Thus, avoiding the expense of litigation is not a significant factor in favor of settlement at this time.

The factual and legal obstacles to plaintiffs' prevailing are significant. This is a disparate impact case in which plaintiffs will have to prove that discrimination against them has been caused by a specific employment practice. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 997, 108 S.Ct. 2777, 2790, 101 L.Ed.2d 827 (1988). Plaintiffs attempted to make a *prima facie* showing by introducing statistics reflecting that certain promotion tests given during the relevant class time period adversely impacted class members.[2] As intervenor demonstrated, however, plaintiffs' bare statistical studies are misleading because they are based on the assumption that all test-takers started on even footing. The probative value of the studies was impeached by evidence that those who failed the tests did not seriously study for them. *Id.* (*citing Contreras v. Los Angeles*, 656 F.2d 1267, 1273–74 (9th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982)). Moreover, intervenor showed that even disregarding test questions found not to be job-related the passing percentages would have been relatively unchanged, and, further, the passing percentages on the now validated tests are not significantly different from those achieved on the tests given prior to validation. An additional obstacle facing plaintiffs is that because of their failure to respond fully to intervenor's discovery,[3] plaintiffs may not be allowed to introduce certain evidence critical to their case. Even if plaintiffs can make a *prima facie* showing, defendant has indicated that if the case goes to trial it will actively defend its actions. The court is satisfied that all counsel are competent and

---

1. *Williams* separately enumerates three criteria. The court considers that the first *Williams* factor—whether a reasonable factual and legal predicate exists for the settlement—is the same as subpart (4) of the fair, adequate and reasonable criterion discussed *infra*.

2. Plaintiffs did not make any showing with regard to discrimination directed toward the hiring class, that is, those persons who sought to be hired but failed the requisite entrance test.

3. *See* intervenor's motion for sanctions filed September 14, 1992.

will continue to zealously represent their clients.

As for the range of recovery, plaintiffs have admitted that defendant's settlement offer is in line with the amount they could expect to recover assuming they prevail at trial.[4] Damages are by no means certain, however, and plaintiffs' counsel readily admits that if liability is established plaintiffs could well recover much less than the proposed amount. The settlement proposal does not make any provision for members of the hiring class. Plaintiffs' counsel admitted that he would not be able to show hiring discrimination. The best that could be done for the hiring class has been voluntarily accomplished by the validation of all tests, affirmative recruiting in the community, and by giving every applicant a second chance to pass the requisite paramedic course. The proposed settlement is recommended by plaintiffs, their counsel, defendant, and its counsel. Intervenor vigorously opposes the proposal.

■■■ The second consideration is the most important. The United States Supreme Court has directed that affirmative action programs, whether voluntarily adopted or court-ordered, are subject to heightened scrutiny. *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989); *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986). Race-conscious relief must be justified by a compelling state interest and such relief must be narrowly tailored to further that interest. *Richmond*, 488 U.S. at 505, 507–08, 109 S.Ct. at 727, 728–29; *Covington v. Beaumont Indep. Sch. Dist.*, 714 F.Supp. 1402, 1406 (E.D.Tex.1989). Moreover, in making its evaluation, the court must consider the necessity for relief, the efficacy of alternative

remedies, the flexibility and duration of the relief, the relationship of the numerical goals to the relevant labor market, and the impact of the relief on the rights of third parties. *United States v. Paradise*, 480 U.S. 149, 171, 107 S.Ct. 1053, 1066, 94 L.Ed.2d 203 (1987).

■■■ The primary concern with the proposed settlement is that it over compensates plaintiffs while imposing unnecessary burdens on the rights of others. Intervenor urges, and the court agrees, based on the record as it now stands, that the back pay to be awarded compensates plaintiffs for all past discrimination,[5] making the skip promotions a bonus, because plaintiffs are now assured that regular promotions will be made in a nondiscriminatory manner.[6] The parties have agreed that all tests are now validated and that parity will be achieved under the affirmative action plans adopted by defendant from time to time. That is all that federal anti-discrimination laws require. *Williams v. City of New Orleans*, 543 F.Supp. 662, 686 (E.D.La. 1982), *aff'd*, 729 F.2d 1554 (5th Cir.1984) (*en banc*).

Defendant stated in open court, and plaintiffs' counsel agreed, that defendant has gone as far as it can legally go in making skip promotions to remedy past discrimination, assuming it existed. Title VII provides:

> Nothing contained in this subchapter shall be interpreted to require any employer ... to grant preferential treatment to any individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color ... in comparison with the total number or percentage of persons of such race, color

---

4. No evidence was presented on this issue or on the separate issue of the amount of attorney's fees to be paid as part of the settlement. *See Parker v. Anderson*, 667 F.2d 1204, 1213 (5th Cir. Unit A 1982). Thus, the court could not make a determination as to the reasonableness of the proposed monetary award in any event.

5. In this regard the court assumes the correctness of plaintiffs' counsel's statement that the back pay award is in line with the amount

plaintiffs could expect to receive if successful at trial.

6. The rank of second driver has been eliminated and time-in-grade requirements have been reduced so as to accelerate the promotion process for African Americans. Moreover, the department has instituted a tutoring program to help candidates study for examinations.

**430**

... in any community, State, section, or other area.

42 U.S.C. § 2000e–2(j). Preferential treatment and the use of quotas by public employers can violate the Constitution and, in this instance, the court concludes that the proposed settlement would indeed do so. *See Watson,* 487 U.S. at 992–93, 108 S.Ct. at 2787–88. Although the skip promotions are proposed to be made in a short period of time, the testimony at the hearing was that the effects will be felt for years to come, especially by other minorities, such as women and hispanics, who would be skipped by African Americans.[7] Further, the court is concerned by the number of skip promotions to be made. Plaintiffs base their figures on bare statistics comparing the races of test-takers. The conclusions reached from a study of the examinations and statistics to which plaintiffs' expert testified [8] are that the actual shortfall in African American promotions is not nearly as high as plaintiffs urge. The studies reflect that the elimination of any test contamination would have resulted in the appointment of no additional African Americans on the 1986 and 1987 Fire Second Driver Engineer examination, one on the 1987 Fire Driver Engineer examination, none on the 1988 Fire Driver Engineer examination, and one on the 1986 Fire Lieutenant examination. Thus, assuming that affirmative relief should be ordered, the court cannot find that the relief sought is narrowly tailored as required.

For the reasons set forth herein,

The court ORDERS that the motion for entry of order approving compromise settlement be, and is hereby, denied.

---

**7.** Not much would be gained by a settlement that generated still more litigation by those skipped.

**8.** Plaintiffs' expert used statistics from studies performed by defendant's expert. At interve-

nor's request, for completeness and to cut down on the number of trial exhibits, the court required the conclusions of defendant's expert to be attached to the corresponding statistical studies.